

**Signed and Filed: June 08, 2009**

_____
**THOMAS E. CARLSON
U.S. Bankruptcy Judge**
_____

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 08-30275 TEC |
| DEBRA A. PITZ, | Chapter 7 |
| Debtor. | |
| AMERICAN EXPRESS CENTURION BANK, | Adv. Proc. No. 08-3053 TC |
| Plaintiff, | |
| vs. | |
| DEBRA A. PITZ, | |
| Defendant. | |

### MEMORANDUM DECISION

The court held a trial in this action on May 12, 2009. Joseph M. O'Donnell appeared for Plaintiff American Express. Drew Henwood appeared for Defendant Debra A. Pitz. The court hereby issues the following decision, which shall constitute its findings of fact and conclusions of law.

**FACTS**

This case concerns Debra Pitz's use of two American Express

MEMORANDUM DECISION        -1-

credit cards. Plaintiff seeks to have the resulting debt excepted from discharge on the basis that Pitz made charges without intending to repay.

Pitz used her Gold Card to make 156 charges totaling $120,324 (net), between June 25, 2007 and August 14, 2007. During that period, Pitz used the Gold Card to purchase the following luxury goods:[1] Louis Vuitton accessories totaling $62,151; shoes totaling $16,346; watches totaling $4,844; other clothing totaling $13,021; home furnishings totaling $9,778;[2] computers totaling $3,768;[3] and miscellaneous[4] luxury items totaling $6,528. The combined amount of the purchases just described is $113,249 (adjusted for returns). On July 20, 2007, American Express mailed Pitz a statement showing a $119,474 balance due on the Gold Card. Pitz never made any payment on the debt shown in that statement.

Pitz used her Platinum Card to make charges totaling $22,848, between June 25th and August 14th. Among those transactions was a charge of $22,080, effectively using her Platinum Card to pay the balance due on a credit card issued by Chase. On July 24, 2007, American Express mailed Pitz a statement showing a $23,565 balance

---

[1] The Bankruptcy Code defines luxury goods by what they are not. The "term 'luxury goods or services' does not include goods or services reasonably necessary for the support or maintenance of the debtor a dependent of the debtor." 11 U.S.C. § 523(a)(2)(C)(ii)(II).

[2] Pitz testified that she lives in a one-bedroom apartment. Between June 25th and August 14th, Pitz made 42 purchases that appear to be for home furnishings.

[3] Pitz testified that she had other home computers, and did not need the additional hardware, software, and accessories that she purchased.

[4] This category includes gift cards, accessories other than shoes, and items purchased from Amazon and Sephora.

MEMORANDUM DECISION -2-

due on the Platinum Card. Pitz never made any payment on the debt shown in that statement.

Pitz had been an American Express cardholder for at least ten years prior to June 2007. The exhibits introduced at trial include statements for both the Gold and Platinum cards from November 2006 through early 2008. In the seven months before she made the charges described above, Pitz had always paid at least the minimum required payment following receipt of her monthly statement.[5]

Pitz's financial resources were clearly inadequate to repay the the June-August 2007 charges. Pitz did not have a job in 2007. She had worked as a information technology specialist for a major law firm in 2006, but went on medical leave on August 1, 2006, and did not work between that date and the filing of her chapter 7 bankruptcy petition on February 21, 2008. Pitz's total income in calendar year 2006 was $78,000. Her stated annual salary at the law firm was likely higher than that, as she received salary for only the first seven months of the year, and received disability payments for the last five months of the year. During all of 2007, Pitz's only income consisted of disability payments that varied between $4,100 and $4,550 per month, while her basic living expenses averaged $4,400 per month. Pitz did not testify regarding her job prospects. In her bankruptcy schedules, Pitz listed no significant property from which her debts could be paid.

Pitz testified that she suffers from bipolar disorder. She has been under the care of a psychiatrist since early 2006, was first diagnosed as bipolar in September 2007, is currently under the care of Dr. Roger Fried, and is currently taking several psychotropic

---

[5] These payments are described in more detail on page 9, below.

MEMORANDUM DECISION          -3-

Case: 08-03053   Doc# 23   Filed: 06/08/09   Entered: 06/09/09 11:37:21   Page 3 of 11

drugs to control her disorder. Pitz testified that she was in a manic stage when she made the June-August 2007 charges. She remembers making the charges, but contends that she did not fully understand what she was doing. Pitz stated that she was very anxious, that she rarely slept, that she went into stores and bought item after item, that her life was in chaos, that she was not opening her mail, that her apartment was filled with unopened boxes and shopping bags, that she gave away many of the items that she purchased, and that at the end of her buying spree she "crashed." Pitz did not offer the testimony of Dr. Fried or any other mental health expert, nor did she explain why she did not produce such evidence. Her counsel marked for identification a few pages of medical records, but did not attempt to introduce them when Plaintiff objected to their introduction without proper authentication as business records.

**DISCUSSION**

1. Legal Standard

   A chapter 7 discharge does not provide relief from a debt that results from a fraud perpetrated by the debtor. 11 U.S.C. § 523 (a)(2)(A). To have a debt excepted from discharge, the creditor must establish the following elements: (1) that debtor obtained money by making a representation of fact; (2) that debtor's representation was false; (3) that debtor knew the representation was false and made the representation with the intent to deceive; (4) that the creditor was justified in relying upon the debtor's representation; and (5) that the creditor suffered damage as a result. <u>Am. Exp. Travel Related Svs. Co. Inc. v. Hashemi (In re Hashemi)</u>, 104 F.3d 1122, 1125 (9th Cir. 1997).

Where the alleged fraud is misuse of a credit card, the courts have adopted two special rules as to how the elements of fraud can be proved. First, use of a credit card constitutes an implied representation that the debtor intends to repay the resulting debt. Id. at 1126. Second, the creditor need not obtain an express admission that the debtor did not intend to repay the charges; the court may infer the debtor's knowledge and intent from the circumstances in which the charges were made. Id. at 1125.

The Ninth Circuit has identified twelve factors that the court should consider in determining whether a debtor acted with intent to defraud in using a credit card.

> (1) the length of time between the charges and the bankruptcy filing; (2) whether or not an attorney had been consulted concerning the filing of bankruptcy before the charges were made; (3) the number of charges made; (4) the amount of the charges; (5) the financial condition of the debtor at the time the charges were made; (6) whether the charges were above the limit of the account; (7) whether the debtor made multiple charges on the same day; (8) whether or not the debtor was employed; (9) the debtor's prospects for employment; (10) the financial sophistication of the debtor; (11) whether there was a sudden change in the debtor's buying habits; and (12) whether the purchases made were luxuries or necessities.

Hashemi, 104 F.3d at 1125 n.2. (citing Citibank South Dakota v. Dougherty (In re Dougherty), 84 B.R. 653, 657 (9th Cir. BAP 1988)). No one of these factors is controlling, nor does the creditor need to prove any minimum number of factors. The evidence is sufficient if, taken as a whole, it shows the debtor's fraudulent intent. Id.

The courts have also recognized that they must act carefully in inferring fraudulent intent from the acts of a debtor who is suffering from bipolar disorder. Dutreix v. Fontenot (In re Fontenot), 89 B.R. 575, 581 (Bankr. W.D.La. 1988). This is so, because a person with bipolar disorder may suffer from an irrational

optimism causing her to believe that "whatever [s]he was doing was going to work out." Id. at 579.

In the present case, it is undisputed that Pitz made the charges in question, that she did not have the ability to repay those charges, and that American Express suffered loss as a result. Pitz disputes that she acted with fraudulent intent, contending that her acts were the product of her bipolar disorder. Pitz also disputes that American Express acted justifiably in relying on her implied representation that she would repay, in light of the large amount and bizarre pattern of her charges.

2. Evidence of Intent to Defraud

Consideration of the surrounding circumstances suggests that Debtor made the charges after June 25, 2007 with intent to defraud. Pitz likely received the June statement for the Gold Card by June 25, 2007. At that time, she knew that she had a balance of $20,672 on the Gold Card, that she had no job, and that her disability insurance payments provided no income in excess of her basic living expenses. Yet between June 25th and August 14th, Debtor used the Gold Card to purchase luxury items totaling $113,249, and used the Platinum Card to pay the $22,080 balance on her Chase credit card. Debtor made no payment on either card after July 5, 2007. The June-August 2007 charges substantially exceeded her highest annual income.

Consideration of the following Dougherty factors suggests that Pitz made the post-June 25th charges with the intent to defraud American Express: the large number of charges made,[6] the large total amount of the charges, Pitz's poor financial condition when she made

---

[6] Pitz made 156 charges on the Gold Card from June 25th through August 14th.

MEMORANDUM DECISION -6-

the charges, multiple charges on same day,[7] Pitz's unemployment when she made the charges, Pitz's sudden change in buying habits,[8] and the fact that approximately eighty percent of the amount charged was for the purchase of luxury goods.[9] The only factors weighing against a finding of fraud are that Pitz did not exceed her credit limit and that she did not file bankruptcy immediately after making the charges (she filed about six and one-half months later). There was no evidence as to when she first consulted a bankruptcy attorney or her financial sophistication.

The evidence of Pitz's medical condition introduced at trial does not negate this strong evidence of intent to defraud. Pitz did not offer the testimony of her psychiatrist or of any other medical expert. This court understands in a general sense that a person suffering from bipolar disorder, while in a manic phase, might sincerely believe she could successfully execute a financial plan that a healthy person would understand to be impossible. Fontenot, 89 B.R. at 579. But this court cannot determine without the help of a medical expert whether Pitz suffered from such delusions at the time she made the charges in question, and whether her illness prevented her from forming the intent to defraud. See Mfrs. Hanover Trust Co. v. Hutchinson (In re Hutchinson), 27 B.R. 247, 251-52 (Bankr. E.D.N.Y. 1983). I note that Pitz seems to have been able to control her use of credit cards during much of the time she has been

---

[7] Pitz made 15 charges totaling $27,758 on July 19th; 14 charges totaling $2,185 on June 26th; 13 charges totaling $8,009 on July 3rd; and 13 charges totaling $4,501 on June 25th.

[8] The Gold Card statement issued July 20, 2007 showed new charges totaling $109,702. The largest amount of new charges shown on the statements for any prior month was $17,756 (June 2007).

[9] From June 25th to August 14th, Pitz's net charges for luxury goods were $113,249, while her total charges were $143,444 (including the $22,080 balance transfer).

MEMORANDUM DECISION                -7-

ill.  I also note that although Pitz is apparently still ill, her testimony at trial was very precise and revealed a strong comprehension of the implications of her credit card use.  In these circumstances, the court is reluctant to rely upon hearsay evidence regarding Pitz's medical condition or her own self-diagnosis, especially where Pitz offered no explanation of why her psychiatrist was not called to testify.  See <u>Keena v. United R.R. of San Francisco</u>, 197 Cal. 148, 157-58 (1925) (court permitted to infer from party's failure to call a witness that the witness's testimony would be adverse); <u>Navon v. Simon (In re Simon)</u>, 364 B.R. 850, 853-54 (D.Conn. 2007) (same).

3.  Evidence of Justifiable Reliance

The circumstances also suggest that American Express was justified in relying upon Pitz's representation that she would repay the charges made between June 25th and August 14th.  In the months before the June-August 2007 charges, Pitz steadily increased the amount of her charges on the Gold Card, then always paid more than the required minimum repayment in the following month, creating an impression that her resources were increasing.  This impression was punctured only when Pitz failed to make any payment in the month following the abusive June 25-August 14 charges.

| Month | New Charges Made | Resulting Balance | Required Payment | Amount Paid Next Month |
|---|---|---|---|---|
| Nov. 2006 | $83 | $83 | $83 | $83 |
| Dec. 2006 | $1,446 | $1,446 | $631 | $2,236 |
| Jan. 2007 | $1,443 | $654 | $300 | $948 |
| Feb. 2007 | $2,555 | $2,260 | $941 | $4,980 |
| Mar. 2007 | $9,631 | $6,911 | $3,705 | $6,831 |
| Apr. 2007 | $7,431 | $7,431 | $1,855 | $7,455 |
| May 2007 | $3,951 | $3,915 | $959 | $1,000 |
| June 2007 | $17,756 | $20,672 | $3,789 | $10,900 |
| July 2007 | $109,702 | $119,474 | $8,660 due 8/14 | $0 |

The following factors also suggest that Plaintiff's reliance was justifiable: Pitz never exceeded her credit limit, Plaintiff telephoned Pitz in mid-July to confirm that the charges were genuine, and Pitz made the bulk of the abusive charges over a short period of time. See Hashemi, 104 F.3d at 1126.

Payment was due on the Gold Card on August 14, 2007; Pitz was obligated to make a payment of at least $8,660 on a balance of $119,474. American Express was no longer justified in assuming that Pitz would repay subsequent charges when she failed to make any payment on that date.

4. Prejudgment Interest and Attorneys Fees

Plaintiff did not provide evidence sufficient to enable the court to calculate prejudgment interest on any basis other the federal judgment rate. Plaintiff also failed to establish any basis upon which the court can award attorneys fees.

**MEMORANDUM DECISION**                -9-

**CONCLUSION**

On the basis of the evidence introduced at trial, I find that from June 25 to August 14, 2007, Pitz made charges on her American Express Cards totaling $120,324 without intending to repay those charges. I find that American Express was justified in relying on Pitz's implied representation of intent to repay with respect to the charges made through August 14, 2007. I find that after August 14, 2007, American Express could not justifiably rely on Pitz's implied representation of intent to repay. I therefore determine that Debtor's obligation to Plaintiff is non-dischargeable in the amount of $120,324, plus prejudgment interest from August 14, 2007 at the federal judgment rate.

**\*\*END OF MEMORANDUM DECISION\*\***

1 | **<u>Court Service List</u>**
---|---
2 | Debra A. Pitz
  | 1770 Broadway St. #206
3 | San Francisco, CA 94109
4 | Drew Henwood, Esq.
  | Law Offices of Drew Henwood
5 | 41 Sutter Street, Suite 621
  | San Francisco, CA 94104
6 |
  | John M. O'Donnell, Esq.
7 | Law Offices of John M. O'Donnell
  | 915 University Avenue
8 | Sacramento, CA 95825

**MEMORANDUM DECISION** -11-